## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------

ELAINE WANG,                                            :
                                                        :
                    Plaintiff,                          :    Case No. _____
                                                        :
v.                                                      :
                                                        :    **COMPLAINT FOR VIOLATIONS OF**
LOXO ONCOLOGY, INC., JOSHUA H.                          :    **SECTIONS 14(e), 14(d) AND 20(a) OF**
BILENKER, M.D., STEVE ELMS, KEITH T.                    :    **THE SECURITIES EXCHANGE ACT**
FLAHERTY, M.D., ALAN FUHRMAN,                           :    **OF 1934**
STEVE D. HARR, M.D., LORI A. KUNKEL,                    :
M.D., TIM MAYLEBEN, and AVI Z.                          :    **JURY TRIAL DEMANDED**
NAIDER,                                                 :
                                                        :
                    Defendants.                         :

--------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.    This is an action brought by Plaintiff against Loxo Oncology, Inc. ("Loxo or the "Company") and the members Loxo's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") in connection with the proposed acquisition of Loxo by Eli Lilly and Company and its affiliates ("Eli Lilly").

2.    Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement (the "Solicitation Statement") to be filed on January 17, 2019 with the United States Securities & Exchange

Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Bowfin Acquisition Corporation ("Merger Sub"), a Delaware Corporation and a wholly owned subsidiary of Eli Lilly, will merge with and into Loxo with Loxo surviving the merger as a wholly owned subsidiary of Eli Lilly (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), Merger Sub has commenced a tender offer (the "Tender Offer") to acquire all of Loxo's outstanding common stock for $235.00 per share. The Tender Offer will expire on February 14, 2019.

3.      As described herein, the Merger Consideration drastically undervalues Loxo's stock and the consideration Loxo stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company.  Defendants have now asked Loxo's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement.   Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Loxo's financial projections, relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in its financial analysis; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs, and (iii) details about the truncated sales process. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the

Exchange Act as Loxo stockholders need such information in order to decide whether to tender their shares.

4.      Moreover, Individual Defendants Bilenker and Elms (defined below) are conflicted. Both are Managing Partners at Aisling Capital LLC ("Aisling"), an investment firm and one of the Company's biggest shareholders. Aisling's stake is worth about $480 million. Aisling also entered into a Tender and Support Agreement with Eli Lilly and Merger Sub, with Aisling agreeing to tender all of the Loxo shares it owns in the Tender Offer. Bilenker, the Company's Chief Executive Officer ("CEO"), will make $45 million from the shares he owns once the Proposed Transaction is consummated, in addition to $241 million from his vested and unvested stock options, $86 million golden parachute, and a $2 million in salary and severance.

5.      The Proposed Transaction took only 18 days from Eli Lilly expressing its interest in the Company to executing the Merger Agreement. This lack of process had completely prevented any type of market check to enhance shareholder value.

6.      It is therefore imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

7.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Loxo's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14d-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Loxo is incorporated in this District.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of Loxo common stock and has held such stock since prior to the wrongs complained of herein.

12.     Individual Defendant Dr. Joshua H. Bilenker, M.D. ("Bilenker") has served as a member of the Board, and also the Company's President and Chief Executive Officer ("CEO") since June 2013. Bilenker is also the Operating Partner at Aisling, where he was a Partner from January 2012 to October 2013, Principal from October 2008 to December 2011, and Associate from April 2006 to September 2008.

13.     Individual Defendant Steve Elms ("Elms") has served as a member of the Board since July 2013. Elms is also the Chairman of the Board, and like Bilenker, a Managing Partner at Aisling.

14.     Individual Defendant Keith T. Flaherty, M.D. ("Flaherty") has served as a member of the Board since September 2013 and is on the Scientific Advisory Board ("SAB").

15.     Individual Defendant Alan Fuhrman ("Fuhrman") has served as a member of the Board since January 2015.

16.     Individual Defendant Steve D. Harr, M.D. ("Harr") has served as a member of the Board since November 2016.

17.     Individual Defendant Lori A. Kunkel, M.D. ("Kunkel") has served as a member of the Board since October 2014.

18.     Individual Defendant Tim Mayleben ("Mayleben") has served as a member of the Board since July 2015.

19.     Individual Defendant Avi Z. Naider ("Naider") has served as a member of the Board since September 2013.

20.     Defendant Loxo is incorporated in Delaware and maintains its principal offices at 281 Tresser Blvd. 9th Floor, Stamford, CT 06901.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "LOXO."

21.     Non-party Eli Lilly is an Indiana corporation and maintains its principal offices at Lilly Corporate Center, Indianapolis, Indiana 46285. Eli Lilly's common stock trades on the New York Stock Exchange under the symbol "LLY."

22.     Non-party Bowfin Acquisition Corporation is a Delaware corporation and is a wholly-owned subsidiary of Eli Lilly, formed solely for the purposes of effectuating the Proposed Transaction.

23.     The defendants identified in paragraphs 12-19 are collectively referred to as the "Individual Defendants" or the "Board."

24.     The defendants identified in paragraphs 12-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction Undervalues Loxo

25.     Loxo is an oncology-focused biopharmaceutical company. The Company's pipeline focuses on cancers that are dependent on single gene abnormalities, such that a single drug has the potential to treat the cancer with dramatic effect.

26.     On December 3, 2018, the Company and Eli Lilly jointly announced the Proposed Transaction:

> INDIANAPOLIS and STAMFORD, Conn., Jan. 07, 2019 (GLOBE NEWSWIRE) -- Eli Lilly and Company (NYSE: LLY) and Loxo Oncology, Inc. (NASDAQ: LOXO) today announced a definitive agreement for Lilly to acquire Loxo Oncology for $235.00 per share in cash, or approximately $8.0 billion. Loxo Oncology is a biopharmaceutical company focused on the development and commercialization of highly selective medicines for patients with genomically defined cancers.
>
> The acquisition would be the largest and latest in a series of transactions Lilly has conducted to broaden its cancer treatment efforts with externally sourced opportunities for first-in-class and best-in-class therapies. Loxo Oncology is developing a pipeline of targeted medicines focused on cancers that are uniquely dependent on single gene abnormalities that can be detected by genomic testing. For patients with cancers that harbor these genomic alterations, a targeted medicine could have the potential to treat the cancer with dramatic effect.
>
> Loxo Oncology has a promising portfolio of approved and investigational medicines, including:
>
> LOXO-292, a first-in-class oral RET inhibitor that has been granted Breakthrough Therapy designation by the FDA for three indications, with an initial potential launch in 2020. LOXO-292 targets cancers with alterations to the rearranged during transfection (RET) kinase. RET fusions and mutations occur across multiple tumor types, including certain lung and thyroid cancers as well as a subset of other cancers.
>
> LOXO-305, an oral BTK inhibitor currently in Phase 1/2. LOXO-305 targets cancers with alterations to the Bruton's tyrosine kinase (BTK), and is designed to address acquired resistance to currently

available BTK inhibitors. BTK is a validated molecular target found across numerous B-cell leukemias and lymphomas.

Vitrakvi, a first-in-class oral TRK inhibitor developed and commercialized in collaboration with Bayer that was recently approved by the U.S. Food and Drug Administration (FDA). Vitrakvi is the first treatment that targets a specific genetic abnormality to receive a tumor-agnostic indication at the time of initial FDA approval.

LOXO-195, a follow-on TRK inhibitor also being studied by Loxo Oncology and Bayer for acquired resistance to TRK inhibition, with a potential launch in 2022.

* * *

Under the terms of the agreement, Lilly will commence a tender offer to acquire all outstanding shares of Loxo Oncology for a purchase price of $235.00 per share in cash, or approximately $8.0 billion. The transaction is not subject to any financing condition and is expected to close by the end of the first quarter of 2019, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Loxo Oncology's common stock. Following the successful closing of the tender offer, Lilly will acquire any shares of Loxo Oncology that are not tendered into the tender offer through a second-step merger at the tender offer price.

The tender offer represents a premium of approximately 68 percent to Loxo Oncology's closing stock price on January 4, 2019, the last trading day before the announcement of the transaction. Loxo Oncology's board recommends that Loxo Oncology's shareholders tender their shares in the tender offer. Additionally, a Loxo Oncology shareholder, beneficially owning approximately 6.6 percent of Loxo Oncology's outstanding common stock, has agreed to tender its shares in the tender offer.

* * *

27.     The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth.  On October 15, 2018, it was reported that the FDA granted Breakthrough Therapy Designation to the Company's lead drug, LOXO-292, a selective RET inhibitor, for the treatment of patients with advanced RET fusion-positive thyroid

cancer, supplementing two previous Designations granted just a month prior. Investment bank Raymond James projects almost $500 million in annual revenue for the drug by 2023. Loxo also has LOXO-305, an oral BTK inhibitor currently in Phase I/II, being evaluated in several B-cell leukemias and lymphomas. It also has LOXO-195, a follow-on TRK inhibitor being studied by Loxo and Bayer. On November 8, 2018, Loxo reiterated the Company's significant progress with its pipeline in its announcement of Third Quarter 2018 results.

28.     Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by limiting their ability to benefit from the Company's continued growth.

29.     Despite the inadequate Merger Consideration, the Board has agreed to the Proposed Transaction. It is therefore imperative that Loxo's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests to tender their shares.

**B.     The Background of the Merger**

30.     Eli Lilly had met with Bilenker sporadically starting on April 16, 2018 to discuss the Company's business. In September 2018, the Company was granted a breakthrough designation for LOXO-292, the Company's "single largest element of value." Solicitation Statement at 18. During this time, the Company was also meeting with potential partners to license LOXO-292.

31.     On December 10, 2018. Dr. Levi Garraway contacted Bilenker to discuss Loxo's development strategy. Ten days later, Eli Lilly indicated to Bilenker and Jacob Van Naarden, the Company's Chief Operating Officer, that it was interested in acquiring the Company for $230 per share in cash and that it wished to announce the transaction in January 2019 at the J.P. Morgan

Healthcare Conference. The Solicitation Statement does not explain the reason for this urgent timeline.

32.    The Board decided to proceed with due diligence at the same time. Within two weeks, the Board only pushed back on the initial December 20 offer of $230 per share, and quickly agreed to the very next offer of $235 per share on December 30, 2018. An analyst at Evercore, in a note to investors, commented that the deal was "not competitive" because "[n]o other bidders were involved despite four companies being involved in discussions to license Loxo's lead candidate LOXO-292 up until Lilly's final offer."

33.    Two weeks after Eli Lilly's initial offer, the parties executed the Merger Agreement, and Aisling Capital executed the Tender and Support Agreement with Eli Lilly on January 5, 2019.

**C.    <u>The Materially Incomplete and Misleading Solicitation Statement</u>**

34.    On January 17, 2019, Loxo and Eli Lilly jointly filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

35.    With respect to the financial projections disclosed in the Solicitation Statement, the Solicitation Statement fails to provide material information.

36.     For the Company Forecasts, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as Unlevered Free Cash Flows ("UFCF"), but fails to provide: (i) the line items used to calculate the UFCF, such as revenue, cost of goods sold, operating expenses, stock based compensation expenses, and estimated net operating losses ("NOLs").  Solicitation Statement at 36.

37.     When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

38.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

39.    Thus, to cure the Solicitation Statement the materially misleading nature of the forecasts as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Solicitation Statement not misleading.

40.    With respect to Goldman Sachs's *Illustrative Sum-of-the-Parts-Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose the following key components used in the analysis: (i) the individual inputs and assumptions underlying the selection of the discount rate range of 10.0%-11.0%, which were reviewed by the Board as stated on page 19 of the Solicitation Statement, including the Company's target capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for the Company, as well as certain financial metrics for the United States financial markets generally; (ii) the unlevered free cash flows and corresponding line items for each of the product candidates of Loxo, including revenue, cost of goods sold, operating expenses, stock based compensation expenses, and estimated NOLs; and (iii) the implied per share value range calculated for each product candidate. Solicitation Statement at 31-32.

41.    With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose (i) the individual inputs and assumptions underlying the selection of the discount rate range of 10.0%-11.0% and the range of perpetuity growth rates of 3.5% to 4.5%; (ii) the unlevered free cash flows and corresponding line items for each of the product candidates of Loxo, including revenue, cost of goods sold, operating expenses, stock based

compensation expenses, and estimated NOLs; and (iii) the terminal values for the Company. Solicitation Statement at 32.

42.     With respect to the Background of the Merger Agreement, the Solicitation Statement fails to disclose if the Board considered the fact that Individual Defendants Bilenker and Elms are Managing Partners of Aisling and if this would create a conflict of interest, and if the Board did decide that there is no conflict, the reason behind its decision. The Solicitation Statement also fails to disclose the relationships of Goldman Sachs and certain fees it received from Eli Lilly and/or its affiliates. Solicitation Statement at 20.

43.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

46.     As set forth above, Defendants filed and delivered the Solicitation Statement to its stockholders, which Defendants knew contained, or recklessly disregarded, material omissions and misstatements described herein.

47.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

49.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

50.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified

above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

51.    Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

52.    The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

<u>COUNT II</u>
**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

53.    Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

54.    Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

55.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

56.    The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

57.    Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

58.    The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer

**COUNT III**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of Loxo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Loxo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Loxo, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Loxo, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

63.    In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 23, 2019

**RIGRODSKY & LONG, P.A.**

By: *_/s/ Gina M. Serra_*

Brian D. Long (#4347)

Gina M. Serra (#5387)

300 Delaware Avenue, Suite 1220

Wilmington, DE 19801

Telephone: (302) 295-5310

Facsimile: (302) 654-7530

Email: bdl@rl-legal.com

Email: gms@rl-legal.com

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

Gloria Kui Melwani

270 Madison Avenue

New York, NY 10016

Telephone: (212) 545-4600

Facsimile: (212) 686-0114

Email: melwani@whafh.com

*Attorneys for Plaintiff*